No. 24-13832

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellee,*

**v.**

**ALAN CLARK, JR.,**
*Defendant-Appellant.*

───────────────

A Direct Appeal of a Criminal Case
From the United States District Court
for the Northern District of Florida, Tallahassee Division

───────────────

**<u>INITIAL BRIEF OF APPELLANT</u>**

───────────────

JOSEPH F. DEBELDER
Federal Public Defender

MEGAN SAILLANT
Assistant Federal Public Defender
Florida Bar No. 0042092
101 SE 2nd Place, Suite 112
Gainesville, Florida 32601
Telephone: (352) 373-5823
Email: Megan _Saillant@fd.org
Attorney for Appellant

*United States v. Alan Clark, Jr.*
*Case No. 24-13832*

<u>Certificate of Interested Persons</u>

The following are persons with an interest in the outcome of this case:

Caruthers, Janese, Assistant Federal Public Defender

Clark, Jr., Alan Joseph, Defendant/Appellant

Coody, Jason, Assistant United States Attorney

DeBelder, Joseph, Federal Public Defender

Fitzpatrick, Martin, United States Magistrate Judge

Hinkle, Robert, United States District Judge

Milligan, Gary, Assistant United States Attorney

Saillant, Megan Jean, Assistant Federal Public Defender

Spaven, Michelle, Acting United States Attorney

Steer, Meredith, Assistant United States Attorney

Walker, Mark, United States Chief District Judge

Weiss, Kaitlin, Assistant United States Attorney

## Statement Regarding Oral Argument

Undersigned counsel leaves to this Court's discretion whether or not oral argument would be beneficial to the just resolution of this appeal.

# Table of Contents

Certificate of Interested Persons ..................................................................... *C1 of 1*

Statement Regarding Oral Argument ...................................................................... i

Table of Authorities ............................................................................................. iii

Statement of Jurisdiction ....................................................................................... 1

Statement of the Issues .......................................................................................... 2

Stament of the Case ............................................................................................... 3

    (i)     Course of the proceedings and disposition in the court below .............3

    (ii)    Statement of the facts ........................................................................3

          *i. Prior to entering his plea Mr. Clark filed a motion to suppress* ...............6

          *ii. Mr. Clark's guidelines range was extremely high, but there was important mitigation presented for the court's consideration* .....................8

          *iii. Mr. Clark was sentenced to 20 years' imprisonment* .......................... 11

    (iii)   Standard of review .......................................................................... 15

Summary of the Arguments ................................................................................. 17

Arguments

    <u>Issue I</u> – The district court erred when it denied the motion to suppress evidence discovered during a search which exceeded the scope of the warrant ...................................................................................................... 18

    <u>Issue II</u> – The district court abused its discretion when it did not properly weigh the relevant factors and imposed an unreasonable sentence ..................................................................................................... 21

# Table of Contents - *cont'd*

Conclusion.............................................................................................24

Certificate of Compliance ...................................................................25

Certificate of Service...........................................................................25

# Table of Authorities

## Cases

*Arizona v. Hicks,*
480 U.S. 321 (1987)............................................................................ 19

*Coolidge v. New Hampshire,*
403 U.S. 443 (1971)............................................................................ 18

*\*Gall v. United States,*
552 U.S. 38 (2007)............................................................................. 16

*\*Horton v. California,*
496 U.S. 128 (1990)........................................................................... 19

*Katz v. United States,*
389 U.S. 347 (1967)........................................................................... 18

*United States v. Butler,*
39 F.4th 1349 (11th Cir. 2022)........................................................... 22

*United States v. Cubero,*
754 F.3d 888 (11th Cir. 2014)............................................................ 11

*United States v. Curtin,*
78 F.4th 1229 (11th Cir. 2023)........................................................... 16

*United States v. Gonzlaez-Zea,*
995 F.3d 1297 (11th Cir. 2021)........................................................... 15

*United States v. Irey,*
612 F.3d 1160 (11th Cir. 2010)........................................................... 22

*United States v. Lall,*
607 F.3d 1277 (11th Cir. 2010) .......................................................... 19

*United States v. Langston,*
590 F.3d 1226 (11th Cir. 2009)........................................................... 23

*United States v. Martin,*
   455 F.3d 1227 (11th Cir. 2006) ............................................................. 22

*United States v. Pugh,*
   515 F.3d 1179 (11th Cir. 2008) ............................................................. 22

*\*United States v. Smith*,
   459 F.3d 1276 (11th Cir. 2006) .............................................................19

*United States v. Talley,*
   431 F.3d 784 (11th Cir.2005) ............................................................... 22

*United States v. Tobin,*
   923 F.2d 1506 (11th Cir. 1991) .............................................................19

*United States v. Tome*,
   611 F.3d 1371 (11th Cir. 2010) .............................................................23

**Statutes**

18 U.S.C. § 2252A ................................................................................4, 20

18 U.S.C. § 3553(a)(1) ............................................................................ 22

18 U.S.C. § 2251(a) ...................................................................................3

18 U.S.C. § 2252A(a)(5)(B) ......................................................................3

U.S. Const. Amend. IV ........................................................................... 18

18 U.S.C. § 2423(b) .................................................................................. 4

§ 3553(a) ................................................................................................. 22

**Rules**

Fed. R. Crim. P. 41.................................................................................. 6

<u>Statement of Jurisdiction</u>

The United States District Court for the Northern District of Florida had jurisdiction over the federal criminal charges against Mr. Clark pursuant to 18 U.S.C. § 3231. The District Court sentenced Mr. Clark on October 31, 2024.[1] (Footnotes in this brief contain only references to relevant documents and page numbers). A written judgment was entered two weeks later.[2] Mr. Clark filed a timely notice of appeal on November 22, 2024.[3] This Court has jurisdiction over his appeal pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

---

[1] ECF 88.
[2] ECF 67.
[3] ECF 69.

<u>Statement of the Issues</u>

<u>Issue I</u> – The district court erred when it denied the motion to suppress evidence discovered during a search which exceeded the scope of the warrant.

<u>Issue II</u> – The district court abused its discretion when it did not properly weigh the relevant factors and imposed an unreasonable sentence.

<u>Statement of the Case</u>

(i)    <u>Course of proceedings and disposition in the court below.</u>

Mr. Clark plead guilty to six counts of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).[4]

He was sentenced to 240 months on all counts, to run concurrently with one another.[5]

Mr. Clark is currently incarcerated.

(ii)    <u>Statement of facts.</u>

During a routine investigation of file-sharing peer-to-peer networks, law enforcement identified an IP address which appeared to have downloaded images containing child pornography.[6] Further investigation established the IP address belonged to a former law enforcement officer, Appellant Alan Clark.[7] Armed with this information, officers with Homeland Security Investigations (HSI) presented a sworn affidavit requesting a warrant to search electronic devices found within Mr. Clark's residence and any vehicles on the property.[8]

---

[4] ECF 49.
[5] ECF 67.
[6] ECF 83 at 3.
[7] *Id.*
[8] ECF 34 at 12.

Specifically, the affidavit requested permission to search for evidence of possession, receipt, and distribution of child pornography.[9] The warrant permitted law enforcement to seize "Computers or storage media used as a means to commit violations as described above, including downloading and transmitting images and/or videos containing child pornography in violation of 18 U.S.C. § 2252A or 18 U.S.C. § 2423(b)."[10]

The search commenced at six in the morning.[11] When officers knocked on Mr. Clark's door, he and his teenage daughter were both home and asleep.[12] They were both ordered out of the home and separated from each other while the warrant was executed.[13] Officer Erika Hindle-Morris, with the Florida Department of Law Enforcement, sat with Mr. Clark's daughter while the search was ongoing.[14] Towards the end of the search the girl's mother arrived on the scene and Morris was instructed to go inside and assist with the search.[15] Morris observed that it appeared the house was in the process of being renovated.[16]

---

[9] *Id.* at 14.
[10] *Id.*
[11] ECF at 83 at 41.
[12] *Id.* at 41, 11.
[13] *Id.* at 11-12.
[14] ECF 83 at 27.
[15] *Id.* at 27.
[16] *Id.* at 38.

With only a few rooms left to search, Morris went to the laundry room and then the attached garage.[17] In the garage Morris observed the stairs to an attic were pulled down.[18] She searched there next.[19] In the attic, Morris observed a box of decorations and wiring.[20] Morris thought the presence of wires in the attic was "weird."[21] She did not touch or manipulate the wires and could not tell what they were attached to.[22]

Morris exited the attic and reported the wires to her supervisor.[23] Another officer went into the attic and followed the wires to where they left the attic and went into the ceiling over a bedroom.[24] They were connected to a smoke detector in the bedroom closet.[25] Prior to Morris finding the wires in the attic, no one had attempted to examine the smoke detector.[26] Based on the "weird" wires, officers removed the smoke detector from the ceiling and inside found a hidden camera.[27] Having found the camera, the search was re-initiated to begin looking for more

---

[17] *Id.* at 28.
[18] *Id.* at 29.
[19] *Id.*
[20] *Id.* at 30.
[21] *Id.* at 33.
[22] *Id.*
[23] *Id.* at 30.
[24] *Id.* at 31.
[25] *Id.*
[26] *Id.* at 34.
[27] *Id.*

cameras.[28] Three additional cameras were located throughout the house.[29] The cameras, and the images they produced, were the basis for the production charges brought against Mr. Clark.

### i. *Prior to entering his plea Mr. Clark filed a motion to suppress.*

Mr. Clark filed a motion to suppress in three parts, arguing three grounds for the suppression of evidence found at Mr. Clark's home. First, law enforcement did not comply with Fed. R. Crim. P. 41 when they did not provide Mr. Clark with a copy of the warrant at the start or the search or when he specifically requested it.[30] Next, the warrant was invalid because it lacked specificity with regards to what was to be searched and or seized, and it made no mention of materials related to the *production* of child pornography.[31] Finally, the scope of the actual search was not authorized by the warrant.[32] To wit, law enforcement was not permitted to further investigate the wires in the attic that led to the hidden camera.[33] The wires themselves were not so inherently illegal as to justify the further searching.[34]

---

[28] *Id.* at 32.
[29] *Id.* at 38.
[30] ECFs 24, 29, 34.
[31] ECF 34.
[32] *Id.*
[33] ECF 29 at 3.
[34] *Id.*

A hearing was held on the motion where two officers, including Morris, and Mr. Clark testified about the morning of the search.[35] At the end of the hearing the court denied Mr. Clark's motion to suppress on all grounds.[36] With regard to the scope of the search, the court indicated the issue did not "seem to be a Fourth Amendment violation[.]" The court agreed the wires "were strange."[37] It went on to say:

> Turns out they went to a smoke detector. As my question suggested, it seems to me that even without finding the wires in the attic, you find a smoke detector in a closet and in a bathroom and you know you're looking for child pornography, it would reasonably occur to somebody that that smoke detector would be somewhere you can put a thumb drive with child pornography. At least common knowledge, I think, the smoke detectors I've tried to change the batteries in, which look just like the ones in that picture, just the space where the batteries would be just a fine place to put a thumb drive. And even with batteries in there there would be room to put the thumb drive inside the smoke detector.

> The defense is right, nobody saw those initially until the wires were seen, and seeing the smoke detector said I need to get up there and open that smoke detector. Maybe didn't occur to them, maybe it's up too high to do it very easily and they thought it was unlikely to be there. There's no rule that says they have to be 100% thorough in executing the search, but they're entitled to be. And when it did occur to somebody, as it turns out because the wires were seen that that smoke detector could be a place to hide material, then they were entitled to go in and look at it. Cameras can have storage capacity. And so while the warrant didn't specifically say get cameras, it did say get

---

[35] ECF 83.
[36] *Id.* at 71.
[37] *Id.* at 75.

storage devices. And if there's a camera that could have a storage device, then they were entitled to seize it.[38]

Shortly after the hearing Mr. Clark plead guilty to the production charges and one count of possession of child pornography.[39] The government agreed to dismiss the remaining possession charges.[40] As a part of the plea agreement Mr. Clark preserved his right to appeal the court's ruling on his motion to suppress.[41]

ii.  *Mr. Clark's guidelines range was extremely high, but there was important mitigation presented for the court's consideration.*

Prior to sentencing the United States Probation Office prepared a pre-sentence investigation report (PSR).[42] The PSR established Mr. Clark's total offense level, after his reduction for acceptance of responsibility, as 43.[43] With zero criminal history, he was placed in category I.[44] The applicable guidelines range was Life imprisonment. However, because the offenses statutory maximums were less than Life, the guidelines range became 2,400 months' imprisonment (the total of the statutory maximum on each count, if they were run consecutively).[45]

---

[38] *Id.* at 75-76.
[39] ECF 49.
[40] *Id.* at 2.
[41] *Id.*
[42] ECF 64.
[43] *Id.* at ¶ 116.
[44] *Id.* at ¶ 120.
[45] *Id.* at ¶ 155.

The PSR included important information about Mr. Clark's professional and medical history.[46] Mr. Clark worked for law enforcement from 2012 until 2016.[47] In 2015, while working at the Leon County Jail, he was exposed to a toxic chemical in an enclosed area.[48] As a result Mr. Clark required three separate lung surgeries.[49] Doctors recommended a lung transplant, but Mr. Clark declined to pursue it because he was worried about the extensive recovery time that would require him to be away from his family and gainful employment.[50] He was given a 36% disability rating by his doctor.[51]

Neither the defense nor the government raised any objections to the PSR.[52]

Defense counsel filed a sentencing memorandum.[53] Mr. Clark, through defense counsel, asked the court to impose a downward variance and sentence him to 15 years' imprisonment.[54] Alternatively, Mr. Clark requested a sentence of 20 years.[55] Mr. Clark identified numerous factors which would support a downward variance.[56] First, Mr. Clark's personal characteristics distinguished him from the

---

[46] *Id.* at ¶¶ 136-137, 149.
[47] *Id.* at ¶ 149.
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] ECF 64 at 35.
[53] ECF 60.
[54] *Id.* at 6.
[55] *Id.* at 13.
[56] *Id.*

more typical production-offender, undermining the accuracy of the Guidelines when applied to him.[57] Specifically, the videos were taken surreptitiously, Mr. Clark had no contact with his victims, and they were all older than the typical victims of production offenses.[58]

Mr. Clark next cited to his serious respiratory condition and his status as a former law enforcement officer as additional mitigating factors.[59] From a young age Mr. Clark has suffered from asthma, and then as discussed above, suffered severe lung injuries during his law enforcement career. He needs daily medications to manage his symptoms.[60] His ability to participate in some daily activities is also restricted.[61] While incarcerated awaiting sentencing, Mr. Clark found it consistently difficult to get proper medical care.[62] Therefore, any incarcerative sentence was sure to exacerbate his health condition and shorten his life expectancy.[63]

A downward variance, Mr. Clark argued, would also help to avoid sentencing disparities among similarly situated defendants.[64] According to statistics gathered

---

[57] *Id.*
[58] *Id.* at 1-3.
[59] *Id.* at 3.
[60] *Id.* at 4.
[61] *Id.*
[62] *Id.*; *see also,* ECF 65-2 at 9.
[63] ECF 60 at 4-6.
[64] *Id.* at 9.

by the United States Sentencing Commission, 57.2% of production offenders receive a variance below the guidelines range.[65] In many cases this is due to the validity of the USSG § 2G2.2 enhancement, which has been acknowledged as "outdated" by this Court. *See United States v. Cubero,* 754 F.3d 888, 899 (11th Cir. 2014).[66] Mr. Clark requested the sentencing court consider his guidelines range without the enhancement when imposing his sentence.[67] A downward variance from that range would support the 15-year requested sentence.[68] Finally, Mr. Clark requested the court consider that he did not distribute the videos he produced.[69] Although he acknowledged this did not excuse his behavior, it was not typical of production offenses, and hopefully spared the victims additional trauma.[70]

### iii.    *Mr. Clark was sentenced to 20 years' imprisonment.*

Mr. Clark was sentenced on October 31, 2024.[71] All parties agreed Mr. Clark's guidelines were dictated by the mandatory minimums for his offenses.[72]

Defense counsel called Dr. Ronda Harrison Spoerl to testify regarding her expertise in the area of forensic psychology and sex offenders.[73] Dr. Spoerl met

---

[65] *Id.*
[66] *Id.* at 10.
[67] *Id.* at 10.
[68] *Id.*
[69] *Id.*
[70] *Id.* at 12.
[71] ECF 88.
[72] *Id.*
[73] *Id.* at 8; *see also,* ECF 65-2.

11

with Mr. Clark for five hours the day before sentencing.[74] After conducting research-based tests, she concluded Mr. Clark fell within a group of sex offenders who had a 1% chance of re-offending in their first five years after release from prison.[75] She also surmised that Mr. Clark's engagement with child pornography could have been caused, at least in part, by his use of testosterone supplements.[76] Based on his blood tests, Dr. Spoerl compared his level of testosterone to that of a 18 to 24 year old man.[77] She advised that sexual preoccupation occurs when one's testosterone levels are that high.[78] Dr. Spoerl advised that Mr. Clark should be re-evaluated to determine appropriate treatment when he is closer to being released from prison.[79]

Mr. Clark addressed the court next.[80] He acknowledged the pain he had caused and apologized to the victims.[81] He admitted to the court that what he did haunts him every day.[82] As a law enforcement officer he was exposed to a toxic chemical, which ended his law enforcement career and threatened the viability of

---

[74] *Id.* at 10.
[75] *Id.* at 11.
[76] *Id.* at 13.
[77] *Id.*
[78] *Id.*
[79] *Id.* at 12.
[80] *Id.* at 15.
[81] *Id.*
[82] *Id.*

his own lungs.[83] After receiving treatment Mr. Clark pursued a career in respiratory therapy.[84] As a travel therapist, Mr. Clark was on the road a lot, isolated from friends, family, and community.[85] Although not an excuse, he cited this isolation as one of the factors which contributed to his slip into criminal acts.[86] Mr. Clark did advise the court of one positive impact of his time in jail – he had dedicated himself to bettering himself through the study of religion.[87] In doing so, he had been working with other inmates, mentoring them in their own religious study.[88] Mr. Clark asked the court to consider all of these factors when arriving at an appropriate sentence.

Defense counsel addressed the court regarding Mr. Clark's request for a downward variance, reiterating the relevant considerations presented in the sentencing memo.[89] The court was given copies of the many emails Mr. Clark sent jail staff requesting refills of his essential medication and an appointment with a respiratory therapist.[90] Counsel also discussed Mr. Clark's increased risk of danger while in the Bureau of Prisons because of his former employment in law

---

[83] *Id.*
[84] *Id.* at 16.
[85] *Id.* at 16-17.
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.* at 18.
[90] ECF 65-2 at 9-26.

enforcement.[91] Counsel reiterated that in the time Mr. Clark had been incarcerated awaiting sentencing he had devoted himself to self-improvement.[92] Mr. Clark started studying religion, attending church, and was mentoring other inmates.[93]

At the start of the government's presentation multiple victims and their parents read statements in open court.[94] In light of those statements and the seriousness of Mr. Clark's offenses, the government requested a sentence "well above the mandatory minimum, if not as the guidelines suggest, life."[95]

The court did ultimately vary below the guidelines but still sentenced Mr. Clark to 20 years' imprisonment, instead of the 15 years he requested.[96] The court cited to multiple reasons which contributed to its decision to impose this sentence.[97] The court identified three main aggravators: 1) the filming of the victims was not a single isolated incident; 2) the victims were girls Mr. Clark knew personally; and 3) the crimes indicated Mr. Clark lacked the consciousness required to abstain from criminal conduct.[98] The court did cite to a few mitigating factors. Mr. Clark appeared sincere in his allocution and apology for the harm he

---

[91] ECF 88 at 21.
[92] *Id.* at 22.
[93] *Id.* at 22-23.
[94] *Id.* at 23-49.
[95] *Id.* at 52.
[96] ECF 67
[97] *Id.* at 54.
[98] *Id.* at 55-56.

caused.[99] The offenses did not involve any physical contact with the victims, and Mr. Clark did not distribute the videos to others on the internet.[100]

The court also took time to identify factors presented that it concluded **did not** have any significance when arriving at Mr. Clark's sentence.[101] The court was not swayed by Dr. Spoerl's testimony regarding Mr. Clark's extremely low likelihood of re-offending.[102] The fact that Mr. Clark was a former law enforcement officer also did not play a part in determining his sentence.[103] Mr. Clark's medical conditions had no impact on his sentence and his lack of criminal history was of "little significance."[104] After discussing Mr. Clark's potential placement in the Bureau of Prisons and advising him of his right to appeal, court was adjourned.[105]

(iii)   <u>Standards of review.</u>

<u>Issue I</u> – "Because rulings on motions to suppress involve mixed questions of fact and law, [this Court] review[s] the district court's factual findings for clear error and its application of the law to the facts de novo." *United States v. Gonzlaez-Zea*, 995 F.3d 1297, 1301 (11th Cir. 2021) (internal quotation omitted).

---

[99] *Id.* at 54.
[100] *Id.* at 56-57.
[101] *Id.* at 58.
[102] *Id.*
[103] *Id.* at 59.
[104] *Id.*
[105] *Id.* at 65-71.

Issue II – The reasonableness of a defendant's sentence is reviewed for an abuse of discretion under the totality of the circumstances. *See Gall v. United States,* 552 U.S. 38, 51 (2007). A district court commits error and abuses its discretion when it does not give proper weight to significant factors, does give weight to improper or irrelevant factors, or clearly errs in its consideration of the proper factors. *United States v. Curtin,* 78 F.4th 1229, 1311 (11th Cir. 2023).

## Summary of the Argument

<u>Issue I</u>– The district court erred when it denied Mr. Clark's motion to suppress which alleged the search of his home went beyond the scope of the warrant. The observations of wires in an attic (not inherently criminal), tied to a smoke detector (also not inherently criminal), did not support the further investigation under the plain view doctrine. Evidence discovered *inside* the smoke detector should have been suppressed.

<u>Issue II</u> – Mr. Clark's 20-year sentence is unreasonable because the district court explicitly renounced certain relevant factors, indicating they were not a part of the court's calculus. This Court should remand for resentencing.

## Arguments

## Issue I

The district court erred when it denied a motion to suppress evidence discovered during a search which exceeded the scope of the warrant.

The district court relied on the plain view doctrine to justify law enforcement's decision to further investigate and manipulate everyday ceiling wires. The search resulted in the discovery and seizure of the evidence related to the production of illicit videos.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures …" U.S. Const. Amend. IV. Warrantless searches "are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967) (footnote omitted). The government bears the burden showing of showing an exception to the warrant requirement justifies a search beyond the scope of a warrant. *Cf. Coolidge v. New Hampshire,* 403 U.S. 443, 454-55 (1971) (the government bears the burden of establishing the reasonableness of a search conducted outside of the judicial process). In this case, the government failed to satisfy this burden of with regards to the warrantless

search and seizure of evidence which led to Mr. Clark's charge and conviction for production of child pornography.

"The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). The level of suspicion regarding the potential criminal nature of an object must rise to the level of probable cause. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987); *United States v. Lall*, 607 F.3d 1277, 1291 (11th Cir. 2010).

Probable cause exists when "a fair probability exists that contraband or evidence of a crime will be discovered in a particular place. *United States v. Tobin,* 923 F.2d 1506, 1510 (11th Cir. 1991) (*en banc*). This involves probabilities "which are factual and practical considerations of everyday life on which reasonable and prudent men, no legal technicians, act." *Smith,* 459 F.3d at 1291. The officer's testimony, and the district court's agreement, that something about the wires was "weird" fell short of probable cause.

The record does not support a finding that Officer Hindle-Morris had probable cause, based on her plain view observation, to believe the wires in the attic were evidence of a crime. This is clear from Morris's own testimony.

The warrant authorized the search for electronic devices used to download or transmit images of child pornography in violation of 18 U.S.C. § 2252A and § 2423(b). There was no mention of any evidence relating to the production of child pornography.

Morris testified she could *not* tell simply by looking at the wires that they were connected to anything nefarious. She described them simply as "weird." Because Morris acknowledged she could *not* tell, *based on her observation*, that the wires were related to any criminal activity, she did not have probable cause to further pursue an investigation of the wires. Instead, Morris had a hunch, acted on that hunch, and in doing so violated Mr. Clark's Fourth Amendment rights. If it had been practical to suspect something would be hidden in a smoke detector, then the other officers would have already inspected them. The information available to Morris within the limitations of the warrant fell far short of establishing probable cause.

The district court did not in fact find Morris had probable cause. But instead, only that the wires were "strange," and therefore there was no Fourth

Amendment violation. The warrant for Mr. Clark's home was for electronics used to store and/or transfer illicit images. Officers had not been searching for hidden cameras because Mr. Clark was not suspected of producing child pornography. Based on these "weird" wires, which could have led to any light fixture, security alarm, or even a functioning smoke detector, the search of Mr. Clark's home was impermissibly broadened. The court pointed out that a thumb drive *could* fit in standard smoke detector. And while that maybe true, it is not a practical conclusion when observing a smoke detector. The camera from the fake smoke detector, and the subsequently discovered cameras, should have been suppressed.

### Issue II

The district court reversibly erred when it did not properly weigh the relevant factors and imposed an unreasonable sentence.

Section 3553(a) mandates a sentencing court "shall impose a sentence **sufficient, but not greater than necessary**," and further instructs that the sentencing court, "in determining the particular sentence to be imposed," shall consider --

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant;
            and

        (D) to provide the defendant with needed educational or
            vocational training, medical care, or other correctional
            treatment in the most effective manner.

18 U.S.C. § 3553(a)(1), (2) (emphasis added). "[A] sentence … may be substantively unreasonable if it does 'not achieve the purposes of sentencing stated in § 3553(a).'" *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quoting *United States v. Martin,* 455 F.3d 1227, 1237 (11th Cir. 2006)). "[A] district court commits a clear error in judgment when it weighs [the § 3553(a)] factors unreasonably, arriving at a sentence that does not achieve the purposes of sentencing as stated in § 3553(a)." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (citations omitted). A sentencing court is required to consider all of the factors, but the weight given to each factor is given broad leeway. *See, e.g., United States v. Butler,* 39 F.4th 1349, 1355 (11th Cir. 2022).

      This Court applies "deferential" review by determining "whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)." *United States v. Talley*, 431 F.3d 784 (11th Cir.2005). The Court does not reweigh the § 3553(a) factors and does not order a resentencing unless the Court finds the district court committed a clear error of judgment in weighing the § 3553(a) factors, resulting in a sentence outside the

range of reasonableness. *United States v. Langston*, 590 F.3d 1226 (11th Cir. 2009). A defendant challenging a sentence has the burden to show the sentence is unreasonable in light of the record and factors. *United States v. Tome*, 611 F.3d 1371 (11th Cir. 2010).

Mr. Clark presented the court with numerous mitigating factors to support a 15-year sentence. At sentencing however, the district court completely disregarded important and relevant factors. The fact that Mr. Clark was former law enforcement didn't "affect the sentence one way or another." Certainly Mr. Clark's prior dedication to public service is relevant. The court also advised Mr. Clark's serious medical condition did not impact the determination of a proper sentence. Mr. Clark provided the court with a disturbing account of the medical neglect he experienced while awaiting sentencing. While in custody he had been repeatedly denied daily medication necessary for his proper respiratory functioning and access to the necessary specialist. The court was also advised that because of his medical condition, the lack of treatment he would receive in prison would sufficiently shorten his life expectancy. The court disregarded all of these relevant factors.

The court abused its discretion when it imposed a 20-year sentence. Mr. Clark's request for a 15-year sentence was supported by relevant factors. Mr. Clark

asked for a reasonable sentence, but the one imposed by the district court was not.

Mr. Clark's sentence should be reversed.

Conclusion

Based on the argument and authority presented above, Mr. Clark

respectfully asks this Court to reverse the lower court's denial of his motion to

suppress and remand the case for further proceedings. Alternatively, Mr. Clark

asks the Court to vacate his sentence and remand for resentencing.

Respectfully submitted,

JOSEPH F. DEBELDER
Federal Public Defender

*Megan Saillant*

MEGAN SAILLANT
Assistant Federal Public Defender
Florida Bar No. 0042092
101 SE 2nd Place, Suite 112
Gainesville, Florida 32601
Telephone: (352) 373-5823
Email: Megan_Saillant@fd.org
Attorney for Appellant

## Certificate of Compliance

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,135 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in Equity A, 14 point.

## Certificate of Service

I certify that a copy of the foregoing has been furnished electronically in Acrobat format by Internet upload to this Court and to Assistant United States Attorney Gary Milligan; U.S. Mail to Alan Clark, Jr., C/O Wakulla County Jail, 15 Oak Street, Crawfordville, FL 32327 on this 18th day of March 2025.

*Megan Saillant*
_____
MEGAN SAILLANT
Attorney for Appellant