No. 24-13832

In the United States Court of Appeals
for the Eleventh Circuit

______________

**United States of America**,

*Plaintiff-Appellee*,

v.

**Alan Clark, Jr.**,

*Defendant-Appellant.*

______________

On Appeal from the United States District Court
for the Northern District of Florida
USDC No. 4:24cr1-RH

______________

**Response Brief of the United States**


Michelle Spaven
Acting United States Attorney

Gary Milligan
Assistant United States Attorney
Appellate Division
111 N. Adams Street, 4th Floor
Tallahassee, Florida 32301
(850) 942-8430

**CERTIFICATE OF INTERESTED PERSONS**

Counsel for Appellee, United States of America, certifies that all interested persons are listed in Appellant Clark's certificate.

GARY MILLIGAN
Assistant United States Attorney

## Statement Regarding Oral Argument

The Government does not request oral argument.

## TABLE OF CONTENTS

Certificate of Interested Persons .................... C1

Statement Regarding Oral Argument .................... i

Table of Contents .................... ii

Table of Citations .................... iv

Statement of Jurisdiction .................... vii

Statement of the Issues .................... 1

Statement of the Case .................... 2

I. Course of Proceedings .................... 2

II. Statement of Facts .................... 3

*A. Clark's Criminal Conduct* .................... 3

*B. Motion to Suppress* .................... 6

*C. Sentencing Hearing and Sentence* .................... 12

III. Standards of Review .................... 17

Summary of the Arguments .................... 20

Arguments .................... 22

I. District The district court did not err in denying Clark's motion to suppress where the warrant allowed the officers to search for all storage media capable of storing child pornography .................... 22

II. District The district court's below-guidelines sentence of 240 months was substantively reasonable Court .................... 28

Conclusion........................................................................................ 36

Certificate of Compliance ........................................................................ 37

Certificate of Service ............................................................................... 37

**TABLE OF CITATIONS**

**Cases** **Pages**

*Dalia v. United States*, 441 U.S. 238 (1979).................................................... 23

*Gall v. United States*, 552 U.S. 38 (2007) ....................................................... 30

*Horton v. California*, 496 U.S. 128 (1990) ..................................................12, 26

*Kimbrough v. United States*, 552 U.S. 85 (2007) .............................................. 30

*Ornelas v. United States*, 517 U.S. 690 (1996).................................................. 18

*Van Buren v. United States*, 141 S. Ct. 1648 (2021).......................................... 30

*United States v. Behety*, 32 F.3d 503 (11th Cir. 1994) ...................................... 18

*United States v. Booker*, 543 U.S. 220 (2005).................................................. vii

*United States v. Bolatete*, 977 F.3d 1022 (11th Cir. 2020) (*per curiam*)..........29, 31

*United States v. Boone*, 97 F.4th 1331 (11th Cir. 2024) ...............................28, 29

*United States v. Brooks*, 648 F.App'x 791 (11th Cir. 2016)............................... 25

*United States v. Castenada*, 997 F.3d 1318 (11th Cir. 2021).........................29, 30

*United States v. Cubero*, 754 F.3d 888 (11th Cir. 2014)...............................29, 30

*United States v. Delva*, 922 F.3d 1228 (11th Cir. 2019)................................... 29

*United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979), *cert. denied*, 445 U.S. 946 (1980) ............................................................ 23

*United States v. Dixon*, 901 F.3d 1322 (11th Cir. 2018) ................................... 29

**United States v. Folk*, 754 F.3d 905 (11th Cir. 2014)..................................... 26

*United States v. Harden*, 104 F.4th 830 (11th Cir. 2024) ................................. 18

*United States v. Hayden*, 119 F.4th 832 (11th Cir. 2024) ................................ 34

*United States v. Holt*, 777 F.3d 1234 (11th Cir. 2015)...................................... 29

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) (en banc)...................28, 30

*United States v. Jiminez*, 224 F.3d 1243 (11th Cir. 2000) ................................ 17

*United States v. Johnson*, 803 F.3d 610 (11th Cir. 2015) .............................28, 31

*United States v. Kane*, 450 F.2d 775 (5th Cir.1971) ........................................ 25

*United States v. Khanani*, 502 F.3d 1281 (11th Cir. 2007)............................... 22

*United States v. Leon*, 468 U.S. 897 (1984).......................................... 12, 25, 26

*United States v. McCoy,* 515 F.2d 962, (5th Cir.1975), *cert. denied,* 423 U.S. 1059 (1976) .....................................................................12, 25

*United States v. Moon*, 33 F.4th 1284 (11th Cir. 2022).................................... 22

*United States v. Morley*, 99 F.4th 1328 (11th Cir. 2024).............................17, 18

*United States v. Newsome*, 475 F.3d 1221 (11th Cir. 2007)............................... 18

*United States v. Oudomsine*, 57 F.4th 1262 1266 (11th Cir. 2023)..............28 - 31

*United State v. Pantle*, 637 F.3d 1172 (11th Cir. 2011) .................................. 35

*United States v. Purcell*, 236 F.3d 1274 (11th Cir.2001) .................................. 26

*United States v. Riley*, 995 F.3d 1272 (11th Cir. 2021)..............................28 - 30

*United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010) ............................. 30

*United States v. Spivey*, 861 F.3d 1207 (11th Cir. 2017).................................. 18

*United States v. Spoerke*, 568 F.3d 1236 (11th Cir. 2009) ................................ 18

*United States v. Schwarz*, 535 F.2d 160 (2nd Cir.1976)................................... 25

*United States v. Smith*, 459 F.3d 1276, (11th Cir. 2006)................................ 26

*United States v. Stanley*, 739 F.3d 633 (11th Cir. 2014) ................................ 29

*United States v. Taxacher,* 902 F.2d 867 (11th Cir. 1990)................................ 26

*United States v. Teller*, 412 F.2d 374 (7th Cir.1969)........................................ 25

*United States v. Valnor*, 451 F.3d 744 (11th Cir. 2006) .................................... 30

*United States v. Vance*, 494 F.3d 985 (11th Cir. 2007) ..................................... 19

*United States v. Wayerski*, 624 F.3d 1342 (11th Cir. 2010)............................... 35

*United States v. Wetherald*, 636 F.3d 1315 (11th Cir. 2011)............................. 18

*United States v. Whyte*, 928 F.3d 1317 (11th Cir. 2019).................................. 34

*United States v. Williams*, 526 F.3d 1312 (11th Cir. 2008) (per curiam)........... 35

**United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir. 1982)....... 22, 23, 27

**Statutes**

18 U.S.C. §§ 2251(a) and (e) ........................................................................ 2

18 U.S.C. §§ 2252A(a)(1) and (b)(1)................................................................ 2

18 U.S.C. §§ 2252A(a)(2) and (b)(1)................................................................ 2

U.S.C. §§  2252A(a)(5)(B) and (b)(2) .............................................................. 2

18 U.S.C. § 3553(a) ....................................... vii, 16 - 18, 20, 28 – 31, 33 - 35

18 U.S.C. § 3742(a) ....................................................................................... vii

28 U.S.C. § 1291 ............................................................................................ vii

**Other Authorities**

U.S. Const. amend. IV ..................................................................................... 22

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1291, the Court of Appeals has jurisdiction of appeals from all final decisions of the district courts of the United States except where a direct review may be had in the Supreme Court.

Pursuant to 18 U.S.C. § 3742(a), a defendant may appeal a sentence that is imposed in violation of law or that is "unreasonable with regard to [18 U.S.C.] § 3553(a)." *United States v. Booker*, 543 U.S. 220, 260-61 (2005).

## STATEMENT OF THE ISSUES

I. Did law enforcement exceed the scope of the search warrant which authorized seizure of electronic storage media capable of storing child pornography when they searched a smoke detector in a bedroom closet capable of holding an electronic storage device?

II. Is Clark's 240-month sentence, reflecting downward variance from the guideline range of life, substantively reasonable?

## STATEMENT OF THE CASE

I. Course of Proceedings

On January 10, 2024, a grand jury returned an indictment charging Clark with nine counts, consisting of counts one through six charging production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e); count seven charging receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1); count eight charging possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2); and count nine charging transportation of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1). Doc. 1.[1] On August 8, 2024, Clark pled guilty to counts one through six and count eight. Doc. 49 at 1. On October 31, 2024, Clark was sentenced to 240 months in prison on each of the counts he plead guilty to, concurrently, to be followed by life on supervised release. Doc. 67 at 3-4. The Judgment was entered onto the docket on November 13, 2024. Doc. 67 at 2.

On November 22, 2024, Clark filed a notice of appeal. Doc. 69. Clark timely appealed and he is incarcerated.

[1] "Doc." refers to the docket entries in NDFL case no. 4:24cr1-RH.

## II. Statement of Facts

### *A. Clark's Criminal Conduct*

In May 2023, a Task Force Officer (TFO) with Homeland Security Investigations (HSI) was investigating a file-sharing peer-to-peer network for users/computers possessing and/or sharing digital files containing child sexual abuse material (CSAM). Doc. 47 at 1; 64 at ¶ 32. On May 31, 2023, the TFO initiated an investigation into an IP address. Doc. 47 at 1; 64 at ¶ 32. The TFO downloaded 181 files of confirmed child pornography from the electronic device at that IP address. Doc. 47 at 1-2; 64 at ¶ 33. Further investigation into the IP address identified Clark as using it from his residence in Tallahassee, Florida. Doc. 47 at 2; 64 at ¶ 34. A federal search warrant for Clark's residence was obtained and executed on December 5, 2023. Doc. 47 at 2; 64 at ¶ 34. The warrant authorized law enforcement to search for evidence relating to a violation of receipt or distribution of child pornography and possession of child pornography. Doc. 41-1 (Gov. Ex. 1 at Attachment B at 1). The officers were permitted to seize "[c]omputers or storage media used as a means to commit" those violations. *Id.* The search warrant defined "storage medium" as "any physical object upon which computer data can be recorded." *Id.* at 6. Accordingly, the search warrant permitted law enforcement to search for and seize any items that could contain digital copies of child pornography.

When law enforcement arrived to execute the warrant, they announced their presence. Doc. 47 at 2; 64 at ¶ 35. The officers then saw Clark go to his back door and move out of sight. Doc. 47 at 2; 64 at ¶ 35. After approximately 30 seconds, Clark returned and followed commands. Doc. 47 at 2; 64 at ¶ 35. Law enforcement checked the area around the back door and found a laptop. Doc. 47 at 2; 64 at ¶ 35. Law enforcement conducted an initial review of the laptop and located a large amount of child pornography. Doc. 47 at 2; 64 at ¶ 35. Later forensic examination of the laptop revealed it contained CSAM - 518 image files and 88 video files, including eight video files that depicted sadomasochism, six videos files that depicted infants or toddlers, and two video files that depicted sadomasochism and infants/toddlers. Doc. 47 at 2; 64 at ¶ 41-42.

Additionally, while searching the residence, one of the officers saw that the attic stairs were pulled down in the garage. Doc. 47 at 2; 64 at ¶ 36. The officer went up the stairs, looked around the attic space, and observed wires that appeared to be connected to something within the ceiling. Doc. 47 at 2; 64 at ¶ 36. The officer notified other members of the warrant team, and they discovered that the wires were attached to what appeared to be a smoke detector in the closet of a minor's bedroom. Doc. 41-3 at 3 (Gov. Ex. 5); 47 at 2-3; 64 at ¶ 36. When the smoke detector was examined, law enforcement found it contained a

hidden camera capable of holding an SD card. Doc. 47 at 3; 64 at ¶ 36. A second camera was found hidden in a smoke detector in the main bathroom used by visitors, including minors. Doc. 41-3 at 4 (Gov. Ex. 6); 47 at 3; 64 at ¶ 36. Both cameras appeared to have the ability to use an SD memory card to save the images captured by the devices. Doc. 47 at 3; 64 at ¶ 36. Other devices found in the residence were examined and found to contain hidden cameras including a cell phone charger located in the bathroom and an alarm clock in the same bedroom. Doc. 47 at 3; 64 at ¶ 36.

A computer forensic analysis was conducted of the digital items seized during the search. Doc. 47 at 3; 64 at ¶ 37. The analysis of these items revealed image and video files which contained child pornography. Doc. 47 at 3; 64 at ¶ 38. The investigators also found media files of the victims listed in counts one through six of the indictment – Minor Females D, E, H, L, M, and N, which were surreptitiously filmed by the secret cameras while they were undressed in the bedroom and bathroom where the cameras were located. Doc. 1 at 1-4; 47 at 3; 64 at ¶ 38.

The forensic examination also showed that Clark was purposely saving videos and had remotely accessed one or more of the cameras from another electronic device in the house on at least one occasion to watch and record the

minor victims. Doc. 47 at 3-4; 64 at ¶ 38. The videos were all created between June 9, 2021, and October 1, 2023. Doc. 47 at 4; 64 at ¶ 38.

After the search of Clark's residence, a subpoena was issued to Amazon for Clark's purchase history, which revealed that Clark had bought multiple hidden camera devices, including two camera smoke detectors. Doc. 47 at 4; 64 at ¶ 39.

Officers also seized a cellular phone from Clark which was found to contain CSAM produced by Clark, including images and videos of some of the minor victims named in the indictment. Doc. 64 at ¶ 40.

The hidden cameras, Samsung cell phone, and Toshiba laptop described above were all manufactured outside of the United States and traveled in interstate commerce before being used by Clark to produce and possess child pornography. Doc. 47 at 4; 64 at ¶ 45.[2]

*B. Motion to Suppress*

On May 20, 2024, Clark filed a motion to suppress the evidence seized during the search of his residence. Doc. 24. On June 5, 2024, he supplemented

[2] Because the laptop and cell phone were seized independent of the discovery of the hidden cameras and because both contained child pornography with the cell phone containing images and videos of the identified minor victims, suppression of the evidence from the hidden cameras would not necessarily prevent the Government from pursuing the charges in this case.

his motion. Doc. 29. Then Clark filed a consolidated motion prior to the suppression hearing. Doc. 34.

On July 24, 2024, the district court began a suppression hearing. Doc. 79. However, the hearing was terminated when District Court Judge Mark Walker decided to recuse himself. Doc. 79 at 27. A second suppression hearing was held on July 29, 2024, before District Court Judge Robert Hinkle. Doc. 41, 83 (referred hereafter as Suppr. Tr.).[3]

At the second suppression hearing, the Government presented testimony from SA Matthew Rizzo of HSI and SA Erika Hindle-Morris of the Florida Department of Law Enforcement (FDLE). Suppr. Tr. 2, 25, 38. SA Rizzo testified that an online investigation led to HSI seeking a search warrant for Clark's residence. *Id*. at 3. SA Rizzo explained aspects of the warrant and preparations for executing it that were made because Clark was former law enforcement. *Id*. at 4-6. SA Rizzo also testified that law enforcement was not seeking evidence of production despite that being mistakenly listed in the operational plan. *Id*. at 7-8.

SA Rizzo explained how Clark was seen running across the house when law enforcement first arrived and then eventually coming back to the front door.

---

[3] "Suppr. Tr." refers to the transcript of the motion to suppress hearing held on July 29, 2024, which is found at docket entry 83. The page numbering follows the numbering in the transcript.

*Id*. at 10. He explained the steps that law enforcement took in securing the residence, the conversation with Clark, and that Clark did not request a copy of the warrant. *Id*. at 10-14. However, law enforcement did provide Clark a copy of the warrant when Clark left the residence, and they left a copy in the kitchen of the searched residence. *Id*. at 23. SA Rizzo also testified that law enforcement was looking for digital storage devices pursuant to the warrant and that defendants hide such devices in strange places, such as a beam behind a cutout piece of drywall. *Id*. at 15.

SA Hindle-Morris testified that she was a member of FDLE's cyber high-tech squad and primarily investigated internet crimes against children. *Id*. at 25. SA Hindle-Morris indicated that she has been involved in approximately 100 search warrants in child exploitation cases, and that she has often found that digital storage media is concealed. *Id*. at 26. She has found storage media in hidden compartments of drawers, in clothing, in attics, laundry baskets, and even a toilet. *Id*. Her squad even has a canine assigned to detect electronics because of how storage media is hidden. *Id*. SA Hindle-Morris also explained that law enforcement would be interested in digital cameras in possession of child pornography cases because they are capable of storing electronic media. *Id*.

SA Hindle-Morris indicated that when she first arrived at the scene of the search warrant execution, she sat with a minor child until her mother arrived. *Id*. at 27. When the mother arrived, SA Hindle-Morris went into the residence to assist with the search. *Id*. When she began searching, she was aware that Clark had attempted to hide a laptop computer outside of his back door. *Id*. at 27-28.

SA Hindle-Morris began searching in a laundry room and then moved into the garage. *Id*. at 28. In the garage, she saw that the attic ladder was down. *Id*. at 28-29. She felt it was odd, so she went up the stairs to the attic. *Id*. at 29. In the attic, SA Hindle-Morris saw wires that seemed weird because of the way they were running. *Id*. at 30, 33. SA Hindle-Morris indicated that the wires ran towards a bedroom in the house, there were no other visible wires, and they were out "loose." *Id*. at 36.

SA Hindle-Morris informed the on-scene supervisor and asked if anyone had found cameras. *Id*. at 30. Agents then began a search for potential cameras and another agent went into the attic and traced the wires to a bedroom and (what appeared to be) a smoke detector but was actually a hidden camera inside the closet. *Id*. at 30-31, 37; Doc. 41-3 (Gov. Ex. 5). The camera was found to contain a SD memory card. Suppr. Tr. at 31. The search team then found other cameras in a bathroom and the same bedroom. *Id*. at 32, 37.

SA Rizzo then briefly testified again about where the other cameras were found. *Id*. at 38. They were found in an alarm clock in the same bedroom as the false smoke detector, a cellphone charger in a bathroom, and another smoke detector in the bathroom. *Id*. Clark's cellphone had images of each of the victims, some of which were also found on the SD memory cards in the hidden cameras. *Id*. at 39-40. However, the primary evidence was found on Clark's cellphone, not the camera memory cards. *Id*. at 40.

Clark also testified regarding when he received a copy of the search warrant. *Id*. at 41-50.

Counsel then made arguments to the district court. Clark's counsel argued that wires in the attic did not indicate that a digital storage device existed, so the search of the smoke detector and other cameras was outside the scope of the warrant. *Id*. at 64-65.[4] The Government responded by first noting that possession of child pornography is a lesser included offense of production, so that evidence of production would also be evidence of possession. *Id*. at 69-70. The Government also pointed out that a camera could contain a digital storage device or was capable of storing electronic media, and the officer did not know

[4] Clark's counsel made other arguments not relevant to this appeal, including that the timing of the service of the warrant violated Rule 41, and that law enforcement exceeded the scope of the warrant because there was no time limitation put on what files law enforcement could look for. *Id*. at 58-68. The Government responded to these arguments. *Id*. at 68-69. The district court then ruled in the Government's favor. *Id*. at 71-74.

where the wires ran to when she first observed them. *Id.* at 70. Finally, the Government argued that the cameras would have been subject to inevitable discovery based on the evidence discovered on Clark's phone. *Id*. at 71.

The district court then ruled, finding

> This doesn't seem to me to be a Fourth Amendment violation; this seems to me to be good police work. An officer saw wires that were suspicious, she didn't know what they were, but she thought they were strange. Turns out that was a good instinct. They were strange. Turns out they went to a smoke detector. As my question suggested, it seems to me that even without finding the wires in the attic, you find a smoke detector in a closet and in a bathroom and you know you're looking for child pornography, it would reasonably occur to somebody that that smoke detector would be somewhere you can put a thumb drive with child pornography. At least common knowledge, I think, the smoke detectors I've tried to change the batteries in, which look just like the ones in that picture, just the space where the batteries go would be just a fine place to put a thumb drive. And even with batteries in there[,] there would be room to put the thumb drive inside the smoke detector.

*Id.* at 75.

The district court also noted that law enforcement is entitled to be 100% thorough in executing a search warrant and when they saw the wires running to a smoke detector that could hide evidence, they were entitled to search there. *Id.* at 75-76. The district court found that cameras have digital storage capacity which would make them subject to seizure even if the warrant did not specifically mention cameras. *Id.* at 76.

The district court then cited to *United States v. McCoy,* 515 F.2d 962, 964 (5th Cir.1975), for the principle that "when the officers are conducting a search, they can seize material that has a nexus with the crime, and that would be true here of a camera when you're looking for child pornography and the camera could have storage capacity." *Id.* The district court also cited to *Horton v. California*, 496 U.S. 128, 136–137 (1990), in noting that the officers were entitled to seize cameras under the plain view doctrine. *Id.* Finally, the district court noted that the *Leon* good faith exception would apply on the issue of the scope of the warrant. *Id.*

*C. Sentencing Hearing and Sentence*

At the sentencing hearing, the district court began by ensuring that the guidelines were calculated correctly. Sent. Tr. at 2-3.[5] Clark's guidelines range was life in prison (which would be limited by the statutory maximums set forth in the Second Final PSR to 2,400 months) with a 15-year minimum mandatory. *Id.*; Doc. 64 at ¶¶ 154-55. No party objected to the guideline range, but Clark sought a downward variance.

Clark called Dr. Harrison-Spoerl to testify that she interviewed Clark for five hours and that he had a low chance of recidivism. Sent. Tr. at 8-14. Clark

[5] "Sent. Tr." refers to the transcript of the sentencing hearing held on October 31, 2024, which is found at docket entry 88 (redacted). The unredacted version is included in Appellant's Appendix. The page numbering follows the numbering in the transcript.

also spoke. *Id*. at 15. He apologized for his conduct and asked forgiveness. *Id*. He mentioned his police service and the chemical exposure that damaged his lungs and led to his healthcare career. *Id*. at 15-16. He also talked about how incarceration made him more religious. *Id*. at 17.

Clark's counsel then argued that the first video occurred accidentally, and Clark never posted any of the videos. *Id*. at 19-20. Counsel also argued that Clark never had physical contact with any of the victims. *Id*. at 20. Based on data from other sentencings, Clark's counsel requested a sentence of under 20 years and noted his problems getting medical treatment. *Id*. at 20-22.

Government counsel called the mother of victim D, who testified about how she had trusted Clark, and how his betrayal of that trust had affected her and victim D. *Id*. at 23-28. She also told the court that-

> There's no punishment that you can give him that will ever be enough in my opinion. There's not a prison bad enough or a sentence long enough. He does not deserve to see the outside of a prison as a free man ever again. I do not believe that he can be rehabilitated or fully pay his debt to society. The only punishment that comes close to just, in my opinion, is a sentence in which he stays in prison until the day he dies -- the day he dies, whenever that may be.

*Id*. at 27-28.

The Government next called the parent of victim E. *Id*. at 28. Victim E's parent began reading from a statement, but then became too emotional and the Government continued with the reading of the statement which talked about the

shock of being told about Clark's crimes, and how it affected victim E and "took away a part of her innocence." *Id*. at 28-32 (quote at 31). Victim E's parent's statement told Clark, "[y]ou are the worst kind of monster, a hidden predator who ambushes its prey." *Id*. at 31.

The Government next read a statement from the parents of victim H. *Id*. at 32. It addressed the impact on victim H and the feeling of betrayal due to the trusted relationship they previously had with Clark. *Id*. at 33. The statement talked about the fear and anxiety that victim H was experiencing because of how she looked up to Clark and how close he was with their family. *Id*. at 34. The statement also read, "I feel as if Alan Clark should do life in prison as this is a major crime and shouldn't be taken lightly or given a chance to commit this crime again or a worser [sic] crime." *Id*.

Next the Government called the mother of victim L who first read a statement from victim L. *Id*. at 35. Victim L talked about how she considered Clark like an extended member of her family and how he violated her trust. *Id*. Victim L asked the court to sentence Clark "to the maximum sentence you can so he can stay in jail for as long as possible." *Id*. Victim L's mother then spoke about how he had violated six innocent children and had cast himself as a victim trying to escape accountability. *Id*. at 36. She also asked that Clark be "punished to the full extent of the law." *Id*.

The Government then called the parents of victim M. *Id*. at 37. Victim M's mother told the court about how they got to know Clark through their daughter's sports activities and how victim M reacted when she was told about being victimized. *Id*. at 37-38. Victim M's father pointed out that he believed Clark had been trying to force tears before the court took the bench and was "prepping us for [a] performance." *Id*. at 38-39. He also believed that Clark had planned his actions by always asking to get the "girls" together and have sleepovers. *Id*. at 40.

The Government next played a video impact statement from victim N and called victim N's mother. Victim N's mother pointed out how Clark had purchased the equipment to commit the crime, obtained the materials to hook up the cameras, tested his equipment, and then committed his crime for 1,154 days. *Id*. at 44-45. Statements were also read from other relatives of victims N and L. *Id*. at 46-49.

The Government then presented argument. *Id*. at 50. First, the Government contested Clark's argument that the first video was accidentally recorded, noting that he had purchased multiple hidden cameras, installed them, and deliberately planned his crime. *Id*. at 50-51. The Government talked about the effect of the crime on the victims, that the damage cannot be undone, and asked for a sentence well above the mandatory minimum. *Id*. at 51-52.

The district court then noted that it was considering the sentencing guidelines and "all of the factors that Congress has set out in Title 18 of the United States Code, Section 3553(a) and all of the information in the record." *Id*. at 53. The court also noted that beyond the six victims specified in the indictment, "there also was extensive child pornography" in Clark's possession that constituted victims. *Id*. at 54. The court accepted that Clark was sincerely sorry for his actions but noted that "[a]n important consideration here is that this was not a one-time isolated event." *Id*. at 54-55. The court also found it significant that the victims were close to Clark and that the effect on the victims' ability to trust people close to them or people in authority was an aggravating factor. *Id*. at 55-56. The district court, however, noted that it would be worse if Clark had physically molested victims and that he did not distribute any of the images he produced. *Id*. at 56-58. The court also noted that it was considering the testimony of Dr. Harrison-Spoerl about recidivism but noted that "[o]ne case is one too many." *Id*. at 58-59.

The district court also considered the fact that Clark had formally been law enforcement, a factor that could arguably be aggravating as well as mitigating, and found that it would not affect the sentence "one way or another." *Id.* at 58-59. The district court specifically said, "it wouldn't mean he should get a longer sentence, wouldn't mean he should get a shorter sentence." *Id*. at 59.

The court considered the fact Clark had been a law-abiding citizen and noted that he had medical conditions. *Id*. at 59-60. In regard to his medical conditions, the court indicated that Clark had complained of his treatment while in pre-trial detention, but it noted that the "Bureau of Prisons works very hard at providing medical, and sometimes does an extraordinary job." *Id.* It specifically found that medical conditions are a factor that the court could consider and "sometimes affect the sentence," but stated that Clark's condition did not affect his sentence. *Id.* at 60.

The district court then indicated that it was going to sentence Clark to 20 years in prison (240 months), noting that there had been requests by the speakers for a life sentence. *Id*. at 63. The court the asked the parties if there were any 3553(a) factors they wanted addressed on the record, and both parties indicated that there were not. *Id*. at 65. The district court-imposed sentence, and Clark was informed of his right to appeal. *Id*. at 66-68.

III. Standards of Review

*Issue 1:*

In reviewing a denial of a motion to suppress, this Court reviews the district court's findings of fact under the clearly erroneous standard and its application of law to those facts *de novo*. *United States v. Morley*, 99 F.4th 1328, 1336 (11th Cir. 2024); *United States v. Jiminez*, 224 F.3d 1243, 1247 (11th Cir.

2000); *United States v. Harden*, 104 F.4th 830, 833 (11th Cir. 2024) ("When we review the denial of suppression motions, we review the district court's factual findings for clear error and its application of the law de novo") (citing *United States v. Spivey*, 861 F.3d 1207, 1212 (11th Cir. 2017)). In doing so, this Court gives due weight to the inferences that the district court and law enforcement officers draw from the facts. *Morley*, 99 F.4th at 1336 (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). When considering a ruling on a motion to suppress, this Court must construe all facts in the light most favorable to the party prevailing in the district court. *Id.* (citing *United States v. Behety*, 32 F.3d 503, 510 (11th Cir. 1994)). Finally, the Court can consider the entire record in reviewing the district court's ruling on the motion to suppress. *Harden*, 104 F.4th at 833 (citing *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007).

*Issue 2:*

This Court reviews a sentence for substantive reasonableness under an abuse of discretion standard. *United States v. Wetherald*, 636 F.3d 1315, 1320 (11th Cir. 2011).

On appeal, the defendant claims the district court's sentence was unreasonable because the district court failed to consider 3553(a) sentencing factors. Appellant's brief at 23-24. Because this issue was raised for the first time on appeal, it is reviewed for plain error. *United States v. Spoerke*, 568 F.3d

1236, 1244 (11th Cir. 2009); *United States v. Vance*, 494 F.3d 985, 993 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENTS

I. The district court did not err in denying Clark's motion to suppress where the warrant allowed the officers to search for all storage media capable of storing child pornography.

The search warrant for Clark's residence permitted law enforcement to search for and seize all computers or storage media used as a means to commit distribution, receipt, or possession of child pornography, and indicated that storage media included any physical object that data could be recorded on. Law enforcement executing this warrant were entitled to fully and thoroughly search the residence for all such devices wherever they could be found or hidden. As such, the district court properly found that the officers searching Clark's home did not exceed the scope of the warrant in searching the smoke detectors and then seizing the hidden cameras in those detectors and in other locations within the residence. Additionally, the district court properly found that the cameras could be seized based on the plain view doctrine where the subject matter of the investigation, the camera's disguised nature, and their location in a bedroom and bathroom used by a minor, would have made their incriminating character immediately apparent to trained law enforcement officers.

II. The district court's below-guidelines sentence of 240 months was substantively reasonable.

The district court did not commit substantive error because it considered all of the 3553(a) factors in imposing its sentence, including mitigating factors,

that were present in this case. After considering the totality of the circumstances, the district court imposed a sentence that was within the range of reasonable sentences that could be imposed in this case and that did not constitute an abuse of discretion.

## ARGUMENTS

I. <u>The district court did not err in denying Clark's motion to suppress where the warrant allowed the officers to search for all storage media capable of storing child pornography.</u>

The Fourth Amendment requires that search warrants "'particularly describe[e] the place to be searched, and the persons or things to be seized.'" *United States v. Moon*, 33 F.4th 1284, 1296 (11th Cir. 2022) (quoting U.S. Const. amend. IV). This exists to "protect individuals from being subjected to general, exploratory searches." *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007). The permissible scope of a search is governed by the terms of the warrant, and the search may be "as extensive as reasonably required to locate the items described in the warrant." *United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir. 1982).

The warrant authorized law enforcement to search for evidence relating to a violation of receipt or distribution of child pornography and possession of child pornography. Doc. 41-1 (Gov. Ex. 1 at Attachment B at 1). The officers were permitted to seize "[c]omputers or storage media used as a means to commit" those violations. *Id.* The search warrant defined "storage medium" as "any physical object upon which computer data can be recorded." *Id.* at 6. Accordingly, the search warrant permitted law enforcement to search for and seize any items that could contain digital copies of child pornography.

The district court properly recognized this when it concluded that law enforcement is entitled to be 100% thorough in executing a search warrant and when they saw the wires running to a smoke detector that could hide evidence, they were entitled to search there. Suppr. Tr. at 75-76. The Court also stated, "even without finding the wires in the attic, you find a smoke detector in a closet and in a bathroom and you know you're looking for child pornography, it would reasonably occur to somebody that that smoke detector would be somewhere you can put a thumb drive with child pornography." Suppr. Tr. at 75. The district court's findings were correct because law enforcement could search the smoke detectors (whether the wires in the attic looked "strange" or not) because they were entitled to search anywhere within the residence where evidence of the crime might be hidden. *Wuagneux*, 683 F.2d at 1352 ("a search may be as extensive as reasonably required to locate the items described in the warrant.") (citing *United States v. Diecidue*, 603 F.2d 535, 560-61 (5th Cir. 1979), *cert. denied*, 445 U.S. 946 (1980)); *see also Dalia v. United States*, 441 U.S. 238, 257 (1979) ("it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant").

The district court's findings were supported by the record, which included the testimony of SA Hindle-Morris and SA Rizzo. They both testified that

electronic storage media is often found hidden in strange places. Suppr. Tr. at 15, 26. SA Hindle-Morris testified-

> We often find electronic storage media concealed. Sometimes they're hidden in hidden compartments of drawers, clothing. We've found electronic devices in attics, laundry baskets. We actually have a canine assigned to our squad right now that detects electronics for that reason.

*Id.* at 26. She also testified that they have found storage devices hidden in a toilet, and that digital cameras are of interest in possession of child pornography cases because they are capable of storing electronic media. *Id.* SA Rizzo similarly testified that

> I have found a storage device in a wall. We had seen in the sheet rock that it was kind of cut out to a square, so just glancing at the wall you wouldn't have seen it. But if you kind of looked around, you know, you could take that little square block off and on a beam was some electronics.

*Id.* at 15. Based on their experience, it was completely reasonable for law enforcement to search the smoke detector in the closet for possible hidden electronic storage media, especially when they had seen strange wires running to it and seen that it was mounted inside a closet.

Furthermore, once the officers found that the smoke detector housed a digital camera, they could seize the camera (and any others they located) because, as the district court noted, cameras have digital storage capacity. *Id.* at 76. That fact would make them subject to seizure even if the warrant did not

specifically mention cameras because cameras qualify as "storage media" under the definitions in the warrant.[6] Likewise, it does not matter that the warrant was not for production, because the cameras are "storage media" which could contain evidence of distribution, receipt, or possession of child pornography. *See United States v. Brooks*, 648 F.App'x 791, 793 (11th Cir. 2016) ("child pornography images may be stored anywhere on a computer or digital device").

Accordingly, the district court did not err in finding that "[t]his doesn't seem to me to be a Fourth Amendment violation, this seems to me to be good police work." Suppr. Tr. at 75. The officers executing the warrant were entitled thoroughly search the residence, and they lawfully did so in this case.[7]

---

[6] The district court also found that cameras have digital storage capacity which would make them subject to seizure even if the warrant did not specifically mention cameras. *Id.* at 76. In so finding, the district court cited to *United States v. McCoy,* 515 F.2d 962, 964 (5th Cir.1975), *cert. denied,* 423 U.S. 1059 (1976), for the principle that "when the officers are conducting a search, they can seize material that has a nexus with the crime, and that would be true here of a camera when you're looking for child pornography and the camera could have storage capacity." *Id.* As discussed, the warrant in this case does provide for the seizure of digital cameras because the meet the definition of "storage media" under the terms of the warrant. However, the district court is also correct that it is permissible under the Fourth Amendment to seize things other than those specifically enumerated in a search warrant if they are apparently related to the criminal endeavor under investigation or have a reasonable relation to the purpose of the search. See *United States v. Kane*, 450 F.2d 77, 85 (5th Cir.1971) ( "Evidence not described in a valid search warrant but having a nexus with the crime under investigation may be seized at the same time the described evidence is seized."); s*ee also, e.g., United States v. Schwarz*, 535 F.2d 160, 163 (2nd Cir.1976); *United States v. Teller*, 412 F.2d 374, 379 (7th Cir.1969).

[7] Additionally, the district court noted that the *Leon* exception would apply on the issue of the scope of the warrant. Suppr. Tr. at 76. The *Leon* exception holds that even if a search warrant has defects, the exclusionary rule does not bar admission of evidence seized in reasonable good faith reliance on that warrant. *United States v. Leon*, 468 U.S. 897, 905 (1984). The *Leon* good faith exception is a broad exception and "searches conducted pursuant to

Clark argues that the district court erred because it relied on the plain view doctrine. While the district court also mentions the application of the plain view doctrine, its primary holding was that law enforcement was entitled to search the smoke detectors, search for other cameras, and seize those items, based on the terms of the search warrant. As such, Clark's appeal should be denied for that reason.

However, Clark is also incorrect in arguing that the plain view doctrine is not applicable. In its findings at the suppression hearing, the district court cited to *Horton v. California*, 496 U.S. 128, 136–137 (1990), noting that the officers were entitled to seize cameras under the plain view doctrine. *Id.* at 76. Under the plain view doctrine, the warrantless seizure of an item is permissible where "(1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014) (citing *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006)); *Horton*, 496 U.S. at 136–37; *see also United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001) (explaining that an officer

---

warrants will rarely require suppression . . . ." *United States v. Taxacher,* 902 F.2d 867, 871 (11th Cir. 1990); *accord Leon*, 468 U.S. at 920-21. Clark failed to raise the district court's *Leon* finding in his appeal and, accordingly, has waived any challenge to that issue which provides an independent basis for affirming the district court.

"may seize any contraband, including weapons, in plain view"). In the present case, the officers were lawfully present in the home and based on all the factors, the incriminating nature of the disguised cameras would have been immediately apparent. Even if the digital cameras had not qualified as storage media under the search warrant, the subject matter of the investigation, their disguised nature, and their location in a bedroom and bathroom used by a minor, would have made their incriminating character immediately apparent to trained law enforcement officers.

Clark argues that this Court should focus on whether the wires first seen in the garage attic were immediately recognizable as incriminating, but this misses the point. The wires were not seized by law enforcement pursuant to the warrant or plain view. The wires led the officers to look at the smoke detector more closely which revealed its incriminating nature. Clark appears to be arguing that the either the officers could not thoroughly search the entire residence or that each thing they searched in the residence has to already be obviously incriminating before they can examine it in more detail. However, that is not the case, and officers may search anywhere within the residence where evidence of the crime might be hidden. *Wuagneux*, 683 F.2d at 1352. Accordingly, Clark's argument that cameras should have been suppressed

because the wires, themselves, were not immediately recognizable as evidence of a crime is without merit.

Accordingly, based on both law enforcement's proper search of the smoke detector as authorized by the search warrant and the plain view doctrine, the district court properly denied Clark's motion to suppress.

## II. The district court's below-guidelines sentence of 240 months was substantively reasonable.

This Court "consider[s] whether a sentence is substantively unreasonable under the totality of the circumstances and in light of the 18 U.S.C. § 3553(a) factors." *United States v. Johnson*, 803 F.3d 610, 618 (11th Cir. 2015); *accord United States v. Boone*, 97 F.4th 1331, 1342 (11th Cir. 2024); *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021). A district "court abuses its discretion when it: '(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors.'" *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023) (quoting *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc)). "That rarely happens given the nature of the enterprise and the familiarity of district court judges with it." *Oudomsine*, 57 F.4th at 1266.

"The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *Johnson*, 803 F.3d at 618; *accord Boone*,

97 F.4th at 1342; *Riley*, 995 F.3d at 1279. In determining a sentence, a district court must evaluate all of the § 3553(a) factors, but it can attach great weight to one factor over others, including the nature and circumstances of the offense. *United States v. Bolatete*, 977 F.3d 1022, 1038-39 (11th Cir. 2020) (*per curiam*); *United States v. Delva*, 922 F.3d 1228, 1256 (11th Cir. 2019); *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). With regard to variances, "a district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *United States v. Holt*, 777 F.3d 1234, 1269 (11th Cir. 2015) (quoting *Cubero*, 754 F.3d at 892); *accord Oudomsine*, 57 F.4th at 1266-67.

"[I]t is only the rare sentence that will be substantively unreasonable." *United States v. Dixon*, 901 F.3d 1322, 1351 (11th Cir. 2018) (internal quotation omitted); *accord United States v. Castenada*, 997 F.3d 1318, 1331-32 (11th Cir. 2021). In any given case, there is a range of reasonable sentences from which the district court may choose. *Boone*, 97 F.4th at 1342-43; *Castenada*, 997 F.3d at 1331; *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014). The sentencing judge "has greater familiarity with . . . the individual case and the individual defendant before him than the Commission or the appeals court," and "is therefore in a superior position to judge their import under § 3553(a) in

each particular case." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal quotations omitted); *accord Cubero*, 754 F.3d at 892.

Accordingly, this Court's "review for reasonableness is deferential, and the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of both [the] record and the factors in section 3553(a)." *United States v. Valnor*, 451 F.3d 744, 750 (11th Cir. 2006) (internal quotation omitted); *accord Oudomsine*, 57 F.4th at 1266-67; *Riley*, 995 F.3d at 1278. Stated another way, the defendant's "burden of establishing that his sentence is substantively unreasonable is heavy," and "the district court has wide discretion to decide whether the § 3553(a) factors justify a variance." *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010), *abrogated on other grounds by Van Buren v. United States*, 141 S. Ct. 1648 (2021); *accord Oudomsine*, 57 F.4th at 1266-67.

The fact that an "appellate court might have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall,* 552 U.S. at 51; *accord McBride*, 511 F.3d at 1297. "A district court's sentence need not be the most appropriate one, it need only be a reasonable one." *Castenada*, 997 F.3d at 1331 (quoting *Irey*, 612 F.3d at 1191). Even as to a substantial variance, this Court will not reverse a sentence unless it is "left with the definite and firm conviction that the district court committed a clear error of

judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Johnson*, 803 F.3d at 618-19; *accord Oudomsine*, 57 F.4th at 1266-67; *Bolatete*, 977 F.3d at 1038.

In the present case, the district court properly considered all of the sentencing factors and relevant information in fashioning its guidelines sentence. The district court based its sentence on a number of important factors.

The district court noted that it was considering the sentencing guidelines and "all of the factors that Congress has set out in Title 18 of the United States Code, Section 3553(a) and all of the information in the record." Sent. Tr. at 53. It acknowledged that there had been requests for a life sentence from individuals who spoke during the sentencing hearing. *Id.* at 63. The also noted that beyond the six victims in the indictment, "there also was extensive child pornography" in Clark's possession that constituted victims. *Id*. at 54. The district court also found that the defendant's actions were committed over time, stating that "[a]n important consideration here is that this was not a one-time isolated event." *Id*. at 54-55. The court also found it significant that the victims were close to Clark and that the effect on the victims' ability to trust people close to them or people in authority was an aggravating factor. *Id*. at 55-56.

The district court also recognized that there were some mitigating factors such as Clark being remorseful, not physically molesting the victims, not distributing the images he produced, and that he had previously been a law-abiding citizen. *Id.* at 54-59. The court also noted that it was considering the testimony of Dr. Harrison-Spoerl about recidivism but noted that "[o]ne case is one too many." *Id*. at 58-59.

Based on these considerations, and the guidelines range of life (limited by the statutory maximums which limited it to 2,400 months in prison), the district court determined that a downward variance to 20 years would be appropriate. Doc. 64 at ¶ 154; Sent. Tr. at 63-64. The district court then noted that individuals speaking at the sentencing hearing had ask for a life sentence, but it noted that while case was more egregious in some ways it was not in others and stated, "[i]n my judgment, it's the sentence that is sufficient but not greater than necessary to achieve the sentencing purposes set out in the statute." *Id.* at 63-64.

In his appeal, Clark argues that the district court failed to fully take into account the mitigation proffered by him. Appellant's Brief at 23-24. Clark argues that the district court's sentence was unreasonable because the court disregarded (1) Clark's former law enforcement experience and (2) that his medical condition was not being properly treated. Appellant's Brief at 23.

However, Clark's argument is without merit because the district court properly considered both issues.

First, the district court did consider Clark's prior law enforcement experience. In addition to noting that it was considering "all of the factors that Congress has set out in Title 18 of the United States Code, Section 3553(a) and all of the information in the record," the court specifically found that Clark's prior experience would not affect the sentence "one way or another." Sent. Tr. at 53, 58-59. The district court found, "it wouldn't mean he should get a longer sentence, wouldn't mean he should get a shorter sentence." *Id*. at 59. Clark interprets these statements as meaning that the district court failed to consider his law enforcement experience. However, Clark is incorrect in his argument. The district court's statements recognized that this factor can be both mitigating and aggravating. Law enforcement experience certainly means that a defendant has done something positive in the past, but it also means that a defendant should have known better and was in a position of trust that could be abused (as reflected in several of the victim impact statements during the sentencing). The district court clearly considered the factor of his prior law enforcement experience, but simply found that in weighing that factor, it did not increase or decrease the sentence. The district court appropriately considered this factor

and the fact that its assessment of Clark's prior law enforcement experience is different from Clark's assessment is not error.

Second, in regard to his medical conditions, the court noted that Clark had complained of his medical treatment while in pre-trial detention, but it noted that the "Bureau of Prisons works very hard at providing medical, and sometimes does an extraordinary job." Sent. Tr. at 59-60. It specifically noted that medical conditions are a factor that the court could consider and "sometimes affect the sentence," but stated that Clark's condition did not affect his sentence. *Id.* at 60. In so doing, the district court explicitly considered and addressed this sentencing factor. The district court noted the factor and explained the weight it was giving to the factor and its reasons why. Once again, Clark appears to be arguing that because the district court did not give the factor the weight and consideration that Clark thought appropriate, it was not considering the factor. However, this is clearly not the case, and the district court did not err in sentencing him.

A district court need not specifically address every potential mitigating factor or argument for a lower sentence before imposing sentence. *United States v. Hayden*, 119 F.4th 832, 836 (11th Cir. 2024); *United States v. Whyte*, 928 F.3d 1317, 1339 (11th Cir. 2019). However, in this case, the district court did note the factors raised by Clark, and that it was considering all of the § 3553(a)

factors. Just because the district court did not see the factors in the same light as the defense, does not mean it did not give them proper consideration.[8]

Finally, Clark failed to object to either issue at the sentencing, so his arguments are subject to plain error review. Under plain error review the defendant has the burden of establishing (1) error, (2) that is plain or obvious, (3) that affected his substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of judicial proceedings. *United State v. Pantle*, 637 F.3d 1172, 1174 (11th Cir. 2011). For the reasons stated above, this Court may affirm on the first prong of the plain error standard of review because the district court considered the mitigating factors argue by Clark on appeal (and, alternatively, may affirm on the second, third and/or fourth prongs of the standard).

In sum, the district court conducted an individualized assessment of the facts, balanced competing considerations, and appropriately determined that a 20-year sentence was warranted by the facts of the case. The district court's

---

[8] To the extent Clark is also raising a challenge to the procedural reasonableness of his sentence, the record confirms that there was no procedural error. A sentence may be procedurally unreasonable if the district court failed to consider the § 3553(a) factors. *United States v. Wayerski*, 624 F.3d 1342, 1353 (11th Cir. 2010); *United States v. Williams*, 526 F.3d 1312, 1321-22 (11th Cir. 2008) (per curiam). However, as just discussed, the district court considered all of the 3553(a) factors, including the two that the defendant claims it ignored. Accordingly, a claim of procedural reasonableness would also fail.

sentence was reasonable and did not constitute an abuse of discretion. This Court should affirm the district court.

## CONCLUSION

For the reasons stated above, the United States, Appellee, respectfully requests that this Court affirm the denial of the motion to suppress and the imposition of sentence by the district court.

Respectfully submitted,

MICHELLE SPAVEN
Acting United States Attorney

GARY MILLIGAN
Assistant U.S. Attorney
Appellate Division
Northern District of Florida
DC Bar No. 484813
111 North Adams Street, 4th Floor
Tallahassee, Florida 32301
(850) 942-8430
Gary.Milligan@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7). This brief contains 8,324 countable words.

## CERTIFICATE OF SERVICE

I certify that one copy of the foregoing has been furnished to the following counsel of record this 12th day of May 2025:

Benjamin James Stevenson
Stevenson Legal, PLLC
919 Panferio Drive
Pensacola Beach, FL 32561
bjs@stevenson-legal.com

GARY MILLIGAN
Assistant U.S. Attorney